E-FILED
Monday, 31 August, 2026 05:02:54 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **PHARMACEUTICAL CARE MANAGEMENT ASSOCIATION,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. 26-cv-3200** |
| **ANN GILLESPIE, in her official Capacity as Director of the Illinois Department of Insurance, and ILLINOIS DEPARTMENT OF INSURANCE,** | ) | |
| **Defendants.** | ) | |

**OPINION**

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is Plaintiff Pharmaceutical Care Management Association's ("Plaintiff" or "PCMA") Motion for Preliminary Injunction requesting this Court enjoin Defendants and their agents from implementing or enforcing the Illinois Prescription Drug Affordability Act ("PDAA") Reporting Requirements, 215 ILCS § 5/513B1.1, and network design restrictions (215 ILCS § 5/513b1) against PCMA's members as applied to ERISA-covered plans. For the reasons that follow, Plaintiff's Motion is GRANTED.

## I. BACKGROUND

On June 16, 2026, PCMA filed its Complaint for Declaratory, Injunctive, and other Relief, claiming the PDAA is preempted because it relates to employee benefit plans covered by ERISA. The Complaint requests this Court enjoin Defendants from enforcing the PDAA's reporting requirements (215 ILCS § 5/513b1.1) and its network design

restrictions (215 ILCS § 5/513b1) against pharmacy benefit managers ("PBMs") serving ERISA-covered plans sponsored by employers and unions. The PDAA defines a PBM as "a person, business, or entity, including a wholly or partially owned or controlled subsidiary of a pharmacy benefit manager, that provides claims processing services or other drug or device services, or both, for health benefit plans." 215 ILCS § 5/513b1(a). The term "health benefit plan" "includes self-funded employee welfare benefit plans except for self-funded multiemployer plans that are not nonfederal government plans." *Id.*

PCMA is the national trade association representing PBMs, whose member companies administer prescription drug benefits for more than 289 million Americans covered by ERISA and non-ERISA health plans. Defendant Ann Gillespie, Director of the Illinois Department of Insurance, has "the rights, powers, and duties appertaining to the enforcement and execution of all the insurance laws of this State," 215 ILCS § 5/401, including the PDAA. PCMA claims its members will be injured if they are required to comply with the PDAA's extensive Reporting Requirements. PCMA alleges the PDAA's network design provisions will restrict the members' ability to design and administer pharmacy networks at the direction of their ERISA plan customers, including their ability to offer beneficiaries incentives to use pharmacies that provide cost savings or quality advantages.

Under the PDAA, PBMs are required to submit an annual report to the Department of Insurance, health benefit plan sponsors, and insurers by September 1, with the first annual report due on September 1, 2026. 215 ILCS § 5/513b1.1(a). Failure to

submit a complete report subjects the PBMs to fines of up to $10,000 per day. 215 ILCS § 5/513b1.1(d). The PDAA provides that the annual reports may be distributed to an "established institution of higher education in [Illinois]" and used "for the creation of a pharmacist dispensing cost report." The annual report will be shared with the General Assembly annually. 215 ILCS § 5/513b1.1(b).

The PDAA requires PBMs to report various "data on the health benefit plan," including for each plan "a list of drugs including corresponding information on therapeutic class, brand name, generic name, or specialty drug name;" "number of covered individuals;" "number of drug-related claims;" "dosage units;" "dispensing channel used;" and "average wholesale acquisition cost per drug." 215 ILCS § 5/513b1.1(a)(1). PBMs must also disclose total gross spending on drugs by each plan and total net spending on drugs by each plan customer. 215 ILCS § 5/513b1.1(a)(3)-(4). Certain items must be disclosed on a claim-by-claim basis in the annual report, including "total out-of-pocket spending" by individual per drug, per transaction; the amount paid by the plan to the PBM for reimbursement per transaction; the amount paid by the PBM to pharmacies per transaction; and the amount of rebates passed through to the plan per transaction; and the amount of the rebates passed through to the covered individual at the point of sale per transaction. 215 ILCS § 5/513b1.1(a)(1),(5)-(7).

Finally, the annual report requires disclosure of any information collected from manufacturers pertaining to copayments; any compensation paid to brokers, consultants, or advisors for "referrals, consideration, or retention by the health benefit plan;" the percentage of drugs charged by affiliated pharmacies; and a list of drugs dispensed by

affiliated pharmacies with their costs; and copies of each contract the PBM has with the plan sponsor or insurer. 215 ILCS § 5/513b1.1(a)(1),(8)-(10). Upon request, the PBM must prepare a "summary format" of the annual report containing "aggregated information to help covered individuals understand their health benefit plan's drug coverage." 215 ILCS § 5/513b1.1(b).

## II. DISCUSSION

ERISA is a comprehensive federal statute that regulates employee benefit plans, including prescription drug benefit plans, *see* 29 U.S.C. § 1001 *et seq.* The statute expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Plaintiff contends that, because of the PDAA's sweeping mandates and restrictions on health plans—including ERISA-covered plans--the PDAA clearly relates to employee benefit plans and is preempted under ERISA in light of *Gobeille v. Liberty Mutual Ins. Co.*, 577 U.S. 312 (2016). Defendants contend that Plaintiff's request for relief is overbroad and cannot meet the high threshold for obtaining a preliminary injunction because it improperly undermines the General Assembly's judgment in passing the PDAA. In support, Defendants argue the Act is designed to reduce climbing prescription drug prices, increase transparency regarding prescription drug prices and options, and prevent diminishing access to local pharmacies.

Plaintiff claims it is likely to succeed on the merits because ERISA broadly preempts any state law that "relates to" an employee benefit plan and the PDAA's reporting requirements are preempted under *Gobeille*, wherein the Supreme Court held that a Vermont statute and regulation requiring all health insurers to file reports with the

State containing claims data and plan administration was preempted by ERISA. 577 U.S. at 325-27. PCMA alleges its members will suffer irreparable harm, absent an injunction, including (1) substantial, non-recoverable compliance costs; (2) compelled disclosure of confidential business information; and (3) damage to customer relationships and goodwill.

In opposing the injunction, Defendants contend Plaintiff has not shown that its five declarants, and particularly all of its members, will suffer irreparable harm because (1) monetary injury due to compliance with government regulation is typically not irreparable harm; (2) no other asserted injuries constitute irreparable harm; (3) PBMs have been reporting some data for months; and (4) PCMA's delay in seeking an injunction undercuts any suggestion of irreparable harm. Defendants argue the Reporting Requirements of the PDAA are ancillary to the PDAA's prohibition against PBM practices that conceal the availability of more affordable prescription drug alternatives and the true cost of prescription drugs.

**A. Legal Standard**

To obtain preliminary injunctive relief, whether through a TRO or preliminary injunction, a plaintiff must show that (1) its underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) it will suffer irreparable harm without the injunction. *Woods v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the court then must balance the harm to each party and to the public interest from granting or denying the injunction. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). "A

preliminary injunction operates on a sliding scale: the greater the likelihood of success on the merits, the less the equities need to favor the moving party." *Wisconsinites for Alternatives to Smoking & Tobacco v. Casey*, 172 F.4th 976, 990 (7th Cir. 2026).

"The first step in the analysis requires a plaintiff to demonstrate that his claim has some likelihood of success on the merits, not merely a better than negligible chance." *Doe v. University of Southern Indiana*, 43 F.4th 784, 791 (7th Cir. 2022) (internal quotation marks and citations omitted). This generally means the plaintiff must "include[] a demonstration of how the applicant proposes to prove the key elements of its case." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). The first step is often decisive. *Doe*, 43 F.4th at 791. In considering the merits, courts do not accept the movant's allegations as true or construe all reasonable inferences in the movant's favor. *Id.* A court should examine the evidence from a "neutral and objective viewpoint," considering the merits as it thinks the merits will be decided following discovery and litigation. *Id.* at 792.

As for the second and third steps, courts consider whether preliminary relief is necessary to prevent irreparable harm that "cannot be fully rectified by the final judgment after trial." *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 680 (7th Cir. 2012). "[S]peculative injuries do not justify this extraordinary remedy." *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 704 (7th Cir. 2005).

**B. ERISA Preemption and *Gobeille***

ERISA has a broad preemption provision, providing generally that ERISA and its implementing regulations "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The provision

is designed to "foreclose any non-Federal regulation of employee benefit plans," subject to "very limited exceptions to preemption." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 104 (1983) (citation omitted). "A patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation," potentially resulting in "reduce[d] benefits" for employees. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 11 (1987).

Because of the breadth of the words "relate to" in the preemption provision, the Supreme Court has observed that "the need for workable standards has led the Court to reject 'uncritical literalism' in applying the clause." *Gobeille*, 577 U.S. at 319 (citation omitted). As relevant here, "ERISA preempts a state law that has an impermissible connection with ERISA plans, meaning a state law that governs a central matter of plan administration or interferes with nationally uniform plan administration." *Id.* at 320; *see also Rutledge v. Pharmaceutical Care Management Assoc.*, 592 U.S. 80, 86 (2020). An impermissible connection with ERISA plans might also arise if "acute, albeit indirect, economic effects" of the state law "force an ERISA plan to adopt a certain scheme of substantive coverage or effectively restrict its choice of insurers." *Id.* (citation omitted). This formulation "ensure[s] that ERISA's express pre-emption clause receives the broad scope Congress intended while avoiding the clause's susceptibility to limitless application." *Id.* "As a shorthand for these considerations, this Court asks whether a state law governs a central matter of plan administration or interferes with nationally uniform plan administration," in which case the state law is preempted. *Rutledge*, 592 U.S. at 87 (internal quotation marks and citation omitted).

To determine whether the PDAA's Reporting Requirement is preempted by ERISA based on the reasoning of *Gobeille*, the Court will examine the reporting requirements of the Vermont law that was before the Supreme Court in *Gobeille*. The Supreme Court described those requirements as follows:

> Vermont requires certain public and private entities that provide and pay for health care services to report information to a state agency. The reported information is compiled into a database reflecting "all health care utilization, costs, and resources in [Vermont], and health care utilization and costs for services provided to Vermont residents in another state." 18 V.S.A. § 9410(b). A database of this kind is sometimes called an all-payer claims database, for it requires submission of data from all health insurers and other entities that pay for health care services.
>
> . . .
>
> Vermont's law requires health insurers, health care providers, health care facilities, and governmental agencies to report any "information relating to health care costs, prices, quality, utilization, or resources required" by the state agency, including data relating to health insurance claims and enrollment. § 9410(c)(3). Health insurers must submit claims data on members, subscribers, and policyholders. § 9410(h). The Vermont law defines health insurer to include a "self-insured ... health care benefit plan," § 9402(8), as well as "any third party administrator" and any "similar entity with claims data, eligibility data, provider files, and other information relating to health care provided to a Vermont resident." § 9410( j)(1)(B). The database must be made "available as a resource for insurers, employers, providers, purchasers of health care, and State agencies to continuously review health care utilization, expenditures, and performance in Vermont." § 9410(h)(3)(B).
>
> Vermont law leaves to a state agency the responsibility to "establish the types of information to be filed under this section, and the time and place and the manner in which such information shall be filed." § 9410(d). The law has been implemented by a regulation creating the Vermont Healthcare Claims Uniform Reporting and Evaluation System. The regulation requires the submission of "medical claims data, pharmacy claims data, member eligibility data, provider data, and other information," Reg. H–2008–01, Code of Vt. Rules 21–040–021, § 4(D) (2016) (CVR), in accordance with

> specific formatting, coding, and other requirements, § 5. Under the regulation, health insurers must report data about the health care services provided to Vermonters regardless of whether they are treated in Vermont or out-of-state and about non-Vermonters who are treated in Vermont. § 4(D); see also § 1. The agency at present does not collect data on denied claims, § 5(A)(8), but the statute would allow it to do so.
>
> Covered entities (reporters) must register with the State and must submit data monthly, quarterly, or annually, depending on the number of individuals that an entity serves. The more people served, the more frequently the reports must be filed. §§ 4, 6(I). Entities with fewer than 200 members need not report at all, *ibid.*, and are termed "voluntary" reporters as distinct from "mandated" reporters, § 3. Reporters can be fined for not complying with the statute or the regulation. § 10; 18 V.S.A. § 9410(g).

*Gobeille*, 517 U.S. at 315-17. The Court observed that "reporting, disclosure, and recordkeeping are central to, and an essential part of, the uniform system of plan administration contemplated by ERISA." *Id.* at 323. It further noted that the Reporting Requirements which compelled "plans to report detailed information about claims and plan members [] both intrudes upon a central matter of plan administration and interferes with nationally uniform plan administration." *Id.* (internal quotation marks and citation omitted). The Vermont law governed "plan reporting, disclosure, and –by necessary implication—recordkeeping. These matters are fundamental components of ERISA's regulation of plan administration." *Id.* at 323. Therefore, "[p]reemption is necessary to prevent the States from imposing novel, inconsistent, and burdensome reporting requirements on plans." *Id.*

In holding preemption was appropriate, the Court was not persuaded by Vermont's economic loss arguments because the challenge to the law was not premised solely on resulting economic burdens. *Id.* at 324. The differing objectives of the Vermont

law and ERISA and the fact that states traditionally have the power to regulate the field of public health did not protect the state law from preemption. *Id.* at 324-26. The Court recognized that a different analysis might apply to a state law such as a tax on hospitals that required only "incidental reporting" by ERISA plans. *Id.* at 325. The Court concluded that the "state statute imposed duties that are inconsistent with the central design of ERISA, which is to provide a single uniform national scheme for the administration of ERISA plans without interference from the laws of the several States, even when those laws, to a large extent, impose parallel requirements." *Id.* at 326-27. Thus, the Supreme Court held that ERISA's express pre-emption clause required invalidation of the Vermont reporting statute as applied to ERISA plans. *Id.* at 327.

In *Rutledge v. Pharmaceutical Care Management Assoc*., 592 U.S. 80 (2020), the Supreme Court considered whether ERISA preempted a state law that effectively required "PBMs to reimburse Arkansas pharmacies at a price equal to or higher than that which the pharmacy paid to buy the drug from a wholesaler." *Id.* at 83-84. "ERISA does not pre-empt state rate regulations that merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage." *Id.* at 88. The Court held the Arkansas law was not preempted because the law constituted a "cost regulation that does not bear an impermissible connection with or reference to ERISA." *Id.* at 91-92.

In *Central States, Southeast and Southwest Areas Health and Welfare Fund, et al. v. McClain*, 2026 WL 2510865, (7th Cir. Aug. 26, 2026), the Seventh Circuit considered whether ERISA preempted Arkansas Insurance Department Rule 128, which

"authorize[d] the Insurance Commissioner of Arkansas to require that health plans pay additional 'dispensing fees' to pharmacies" and "require[d] plans to report certain information related to their compensation of pharmacies." *Id.* at *1. The plaintiffs argued ERISA preempted both provisions, contending the requirements bore "an impermissible connection to ERISA plans by dictating plan choices and encroaching on the uniform reporting regime that Congress intended ERISA to provide." *Id.* Relying on *Rutledge*, the Seventh Circuit held that the Arkansas dispensing fee requirement is a "cost regulation" that is not preempted by ERISA. *Id.* The Court found the Reporting Requirement to be a "closer case," observing it was "in tension with *Gobeille*'s broad determination that reporting is a principal and essential feature of ERISA and Congress intended to preempt state reporting laws." *Id.* (internal quotation marks and citation omitted). Ultimately, the Seventh Circuit determined the Reporting Requirement fell "within *Gobeille*'s exception for state laws the enforcement of which necessitates incidental reporting by ERISA plans." *Id.*

**C. Likelihood of Success on the Merits**

After consideration of the PDAA and the Vermont statute at issue in *Gobeille*, the Court finds Plaintiff is likely to succeed on the merits, to the extent it seeks a declaration that the PDAA is preempted by ERISA. "ERISA's reporting, disclosure, and recordkeeping requirements for welfare benefit plans are extensive" and are "central to, and an essential part of, the uniform system of plan administration contemplated by ERISA." *Gobeille*, 577 U.S. at 321, 323. The Secretary of Labor, not individual states, "is authorized to administer the reporting requirements of plans governed by ERISA." *Id.* at

323. The Vermont law in *Gobeille* and the PDAA include similar extensive Reporting Requirements such as requiring plans to report detailed information about claims and plan members. *Id.* The Supreme Court cautioned that "[d]iffering, or even parallel, regulations from multiple jurisdictions" could result in a waste of resources while potentially subjecting plans to wide-ranging liability. *Id.* The same concerns would be present here as they relate to the Reporting Requirements of the PDAA.

A comparison of the two laws also reveals that the reporting party and the recipient of the report are the same. In *Gobeille*, the reporting requirement was imposed on ERISA's third-party administrator while the PDAA tasks PBMs acting as third-party administrators to ERISA plans with reporting. 577 U.S. at 316-18; 215 ILCS 5/513b1.1(a). In both cases, the State is the entity that receives the report and the information contained within the report is substantially the same. *See Gobeille*, 577 U.S. at 315-16; 215 ILCS 5/513b1.1(a), (b). *Gobeille* concerned the disclosure of "medical claims data, pharmacy claims data, member eligibility data, provider data, and other information," 577 U.S. at 316, while the PDAA requires the reporting of detailed claim-level information of the same and additional categories. 215 ILCS 5/513b1.1(a)(1)-(11).

Vermont and Illinois also require the reporting for essentially the same reasons—Vermont collected the data for an ongoing review of health-care utilization and expenditures, and the PDAA reports may be used by an educational institution for the creation of a "pharmacist dispensing costs report" to be submitted to the General Assembly. *Gobeille*, 577 U.S. at 315-16; 215 ILCS 5/513b1.1(b). As Defendants acknowledge, the PDAA's Reporting Requirements are intended "to illustrate whether

and how the Act's provisions may affect Illinois health benefit plans, covered individuals and pharmacies over time," in order "to protect Illinois patients from deceitful and harmful PBM practices." (Doc. 24 at p. 20). Similarly, the Vermont law required reporting so that there was a "resource for insurers, employers, providers, purchasers of health care," and to allow "State agencies to continuously review health care utilization, expenditures, and performance in Vermont." *Gobeille*, 577 U.S. at 316. Like the Vermont law in *Gobeille*, the PDAA relates to an employee benefit plan and draws an impermissible connection to ERISA.

Defendants attempt to distinguish the PDAA on the basis that its reporting requirements are incidental to its core purposes of protecting Illinois patients from allegedly harmful PBM practices. The Court left open the possibility that preemption might not apply if the state law involved only incidental reporting. *See Gobeille*, 577 U.S. at 325 ("The analysis nay be different when applied to a state law, such as a tax on hospitals, the enforcement of which necessitates incidental reporting by ERISA plans.") (internal citations omitted).

In *McClain*, the Seventh Circuit considered a reporting requirement that mandated plans to report certain information related to their compensation of pharmacies. *McClain*, 2026 WL 2510865, at *1. Based on *Gobeille*, the court found the issue of whether the reporting provision bore an impermissible connection to ERISA was "a closer call" than whether the dispensing fee requirement did. *Id.* at *5. Upon "read[ing] *Gobeille* in harmony with *Rutledge*, which makes clear that ERISA does not preempt state laws aimed at the cost of health benefits," the Seventh Circuit determined the reporting requirement

was necessary for Arkansas to enforce the dispensing fee requirement. *Id.* Because there was no indication in the record that the reporting requirement went beyond what was necessary to satisfy the purposes of Arkansas Insurance Department Rule 128, the Court concluded the reporting requirement was sufficiently incidental to avoid preemption under *Gobeille*. *Id.* at 6.

*McClain* does not support Defendants' arguments against preemption. The PDAA's Reporting Requirement is not necessary for Illinois to enforce a fee requirement. Even if it were necessary to enforce such a requirement, the Reporting Requirement of the PDAA is much broader than necessary to accomplish that objective and does not merely require incidental reporting. The Seventh Circuit suggested the result would be different in such circumstances. *See McClain*, 2026 WL 2510865, at *6 ("Perhaps if there were allegations that any of the Reporting Requirements were more exhaustive than necessary, or burdensome beyond an 'incidental' nature, this would be a different case."). Given the PDAA's extensive mandates and the Seventh Circuit's determination that the Reporting Requirement in *McClain* were a close call, the Court finds Plaintiff would likely succeed on the merits.

The out-of-circuit cases cited by Defendants are factually distinguishable. In *Self-Insurance Institute of America, Inc. v. Snyder*, 827 F.3d 549 (6th Cir. 2016), the Sixth Circuit considered whether ERISA preempted a Michigan health insurance law which imposed a tax to fund Medicaid and which included reporting and record-keeping provisions. *Id.* at 556-58. The court determined the law was not preempted because reporting and record-keeping were incidental purposes. *Id.* at 558 ("The Act is, at its core, an Act to

generate the revenue necessary to fund Michigan's obligations under Medicaid. Though it does touch upon reporting and record-keeping, the thrust of the Act is to collect taxes—not to amass data.").[1]

In *Pharmaceutical Care Management Assoc. v. Wehbi*, 18 F.4th 956 (8th Cir. 2021), the Eighth Circuit considered whether ERISA preempted a North Dakota statute that, upon request, required a pharmacy benefits manager or third-party payer to "provide a pharmacy or pharmacist with the processor control number, bank identification number, and group number for each pharmacy network established or administered by a pharmacy benefits manager to enable the pharmacy to make an informed contracting decision." *Id.* at 965. The law also provided that, upon request, "a pharmacy benefits manager or third party payer that has an ownership interest . . . in a pharmacy shall disclose . . . any difference between the amount paid to a pharmacy and the amount charged to the plan sponsor contracted payer." *Id.* The reporting provisions required the disclosure of "basic information to pharmacies and plan sponsors upon request." *Id.* at 968-69. The court observed that "such modest disclosure requirements constitute, at most, regulation of a noncentral 'matter of plan administration' with *de minimis* economic effects and impact on the uniformity of plan administration across states." *Id.* at 969 (citing *Gobeille*, 577 U.S. at 320). The provisions "require only the disclosure, upon request, of basic information to pharmacies and plan sponsors; neither section requires PBMs to report to North Dakota the kind of detailed information that ERISA requires plans to

[1] PCMA notes it is not seeking to enjoin 215 ILCS 5/513B1.1(a)(1)(B), which is the only provision of the PDAA pertaining to the collection of a tax.

report to the Secretary of Labor." *Id.* The Eighth Circuit concluded that the challenged provisions did not have an impermissible connection with ERISA plans. *Id.*

The PDAA's Reporting Requirements are not incidental like those before the Seventh Circuit in *McClain*. They are much more extensive than the reporting provisions at issue in *Snyder* and *Wehbi*. Furthermore, the Reporting Requirements are not intertwined with the enforcement of any specific, non-preempted provision of the PDAA such as a tax or fee requirement. The PDAA's extensive Reporting Requirements are most analogous to those in *Gobeille,* and constitute requirements that "are central to, and an essential part of, the uniform system of plan administration contemplated by ERISA." 577 U.S. at 323. Therefore, Plaintiff is likely to succeed on the merits in establishing the PDAA's Reporting Requirements are preempted by ERISA because the provisions regulate a central matter of plan administration and interfere with nationally uniform plan administration.

**D. Irreparable Harm**

Plaintiff alleges its members will suffer irreparable harm without entry of an injunction. "Harm is irreparable if legal remedies available to the movant are inadequate, meaning they are seriously deficient as compared to the harm suffered." *DM Trans, LLC v. Scott*, 38 F.4th 608, 618 (7th Cir. 2022). PCMA contends its members will be harmed in at least three different ways: (1) by imposing substantial, non-recoverable compliance costs or fines; (2) by compelling disclosure of confidential business information; and (3) by harming customer relationships and goodwill.

Citing *American Hosp. Ass'n v. Harris*, 625 F.2d 1328 (7th Cir. 1980), Plaintiff contends that "injury resulting from attempted compliance with government regulation ordinarily is not irreparable harm." *Id.* at 1331. The Court concludes that the possibility of a $10,000 fine per day for noncompliance suffices to establish irreparable harm. *See, e.g., Staffing Services Ass'n of Ill. v. Flanagan*, 720 F.Supp.3d 627, 641 (N.D. Ill. 2024) (enjoining state law given plaintiff's strong showing of ERISA preemption and irreparable harm due to unrecoverable compliance costs because of state immunity). "When enforcement actions are imminent—and at least when repetitive penalties attach to continuing or repeated violations and the moving party lacks the realistic option of violating the law once and raising its defenses—there is no adequate remedy at law." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (7th Cir. 1992) (finding injunctive relief to be appropriate in part because state imposed liability via civil penalties and consumer damages actions). Therefore, Plaintiff has demonstrated that irreparable harm will result without entry of an injunction.[2]

Defendants further contend that any injunctive relief must be narrowly tailored—for example, only to the five PBM representatives who submitted declarations in support of Plaintiff's motion. However, PCMA is proceeding on behalf of its members and the PDAA applies in the same manner to every PCMA member serving ERISA-covered plans

[2] Defendants also allege Plaintiff cannot show irreparable harm because it delayed seeking injunctive relief. The PDAA was enacted on December 2, 2025. Plaintiff filed its Complaint on June 16, 2026, and its Motion for Preliminary Injunction on July 1, 2026, two months before the effective date of PDAA's Reporting Requirements. The Court finds no undue delay. There was sufficient time for the motion to be fully briefed, an evidentiary hearing, and for the Court to consider the merits. Furthermore, Plaintiff represented that it made efforts to resolve the issue without filing the motion.

in Illinois. It is typical in trade association litigation for injunctive relief to extend to all members based on the irreparable harm of evidence submitted by a subset of members. *See, e.g.*, *Iowa Assoc. of Bus. and Ind. v. Ommen*, 799 F.Supp.3d 795, 857-58 (S.D. Iowa 2025) (finding that "extending preliminary relief to Plaintiffs' contractors and agents is appropriate to afford Plaintiffs' effective relief"); *Illinois Bankers Assoc. v. Raoul*, 760 F.Supp.3d 636, 664 (N.D. Ill. 2024) (submission of declaration from several IBA members was sufficient to demonstrate resulting irreparable harm of other members); *Staffing Services Assoc. of Ill. v. Flanagan*, 720 F. Supp.3d 627, 640-41 (N.D. Ill. 2024) (granting injunction to trade association based on testimony of several members). Because the PDAA applies equally to PCMA members, the Court concludes that the five declarations from PCMA members are sufficient to demonstrate the resulting harm to all PCMA members serving ERISA plans.

**E. Balance of Equities and Public Interest**

Based on the broad scope of the ERISA preemption provision and the PDAA's extensive Reporting Requirements, Plaintiff has a strong likelihood of success on the merits, which means that Plaintiff's burden for satisfying the equities analysis is lower. *See Casey*, 172 F.4th at 990.

The Court recognizes that Illinois has a strong interest in protecting consumers from predatory practices. The increased cost of prescription drugs in recent years is a significant problem that Illinois and other states have sought to address. Other problems the PDAA seeks to address include undisclosed self-serving contracts with drug companies; a lack of transparency of relationships with affiliates, consultants, and

brokers; and a long-standing failure to protect clients and plan participants. Defendants note that the Reporting Requirements in the PDAA permit the monitoring of PBM practices and enforcement of the Act. The Court recognizes this is a significant interest. and Illinois certainly has a strong interest in enforcing its own democratically enacted laws. *See, e.g., Del. State Sportsmen's Ass'n, Inc. v. Del. Dept. of Safety and Homeland Sec.*, 108 F.4th 194, 205 (3d Cir. 2024) ("Courts rightly hesitate to interfere with exercises of executive or legislative authority.").

At the same time, ERISA calls for federal supremacy when a state law imposes mandates and restrictions on health plans that encroach on ERISA's regulatory scheme. *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 98 (1993); *see also Joelner v. Village of Washington Park, Illinois*, 378 F.3d 613, 620 (7th Cir. 2004) ("[T]here can be no irreparable harm to a [government entity] when it is prevented from enforcing an unconstitutional statute."). The State's strong interest in enforcing its own laws must yield to Congress's decision more than 50 years ago to expressly preempt "any and all State laws as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). Therefore, the Court finds the balance of equities and public interest favor an injunction.

## III. CONCLUSION

For the reasons stated, Plaintiff's Motion for Preliminary Injunction (Doc. 8) is GRANTED.

IT IS HEREBY ORDERED that Defendants Ann Gillespie, in her official capacity as Director of the Illinois Department of Insurance, and the Illinois Department of

Insurance, and any agents of Defendants or any other persons working at their direction or in active concert therewith, or subject to Defendants' control, are ENJOINED from implementing or enforcing the Reporting Requirements of the Prescription Drug Affordability Act, 215 ILCS 5/513b1.1, against Plaintiff's members as applied to ERISA-covered employee benefit plans, pending final resolution of this action on the merits or further Order of this Court;

IT IS ORDERED that Defendants shall not assess or impose any fine, penalty, or adverse action against PCMA's members for failure to comply with the Reporting Requirements of 215 ILCS 5/513b1.1 as applied to ERISA-covered employee benefit plans during the pendency of this injunction;

IT IS ORDERED that, pursuant to Federal Rule of Civil Procedure 65(c), the security requirement is hereby waived, given the minimal harm to Defendants from the maintenance of the status quo;

IT IS ORDERED that Defendants' counsel shall provide written notice of this Order to all officers, agents, successors, servants, employees, and attorneys of Defendant, and to any other persons working at their direction or in active concert therewith, or subject to Defendants' control, and shall file a certificate of service on the docket at the same time; and

IT IS ORDERED that this preliminary injunction shall take effect immediately upon entry of this Order and shall remain in effect until final resolution of this action on the merits, further Order of this Court, or agreement of the parties.

ENTER: August 31, 2026

/s/ Colleen R. Lawless
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE